# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LANDMARK FINANCIAL
SOLUTIONS, LLC,**

      **Plaintiff,**

v.                                Case No:   6:14-cv-1764-Orl-41GJK

**ROBERT L. WHITESIDE, CYNTHIA A.
WHITESIDE and LVNV FUNDING,
LLC,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S VERIFIED MOTION FOR DEFAULT FINAL JUDGMENT (Doc. No. 30)** |
| **FILED:** | **March 20, 2016** |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED** and the case be **DISMISSED WITHOUT PREJUDICE**. | |

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR DEFAULT JUDGMENT (Doc. No. 31)** |
| **FILED:** | **March 21, 2016** |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED as moot**. | |

**I.     BACKGROUND.**

On October 29, 2014 Landmark Financial Solutions, LLC (the "Plaintiff") filed a complaint (the "Complaint"), based upon diversity jurisdiction against Robert L. Whiteside, Cynthia A. Whiteside (collectively, the "Debtor Defendants"), and LVNV Funding, LLC (the "Judgment Creditor Defendant"). Doc. No. 1. In this action, Plaintiff seeks foreclosure, possession, judicial sale, and a judgment for all amounts due under a promissory note and mortgage to certain real property. Plaintiff alleges that it is the assignee, holder, and owner of an November 15, 2006 promissory note for which a mortgage secured certain real property (the promissory note and mortgage collectively referred to by Plaintiff as the "Instruments"), located at 1143 Wild Rose Drive, Northeast, Palm Bay, Florida 32905 (the "Property"). Doc. Nos. 1 at ¶¶ 8, 10, 14; 30-2 at 1-5 (adjustable rate note); 30-3 at 1-16 (mortgage).[1] Plaintiff contends that the Debtor Defendants executed the Instruments, they have failed to make scheduled installment payments and, as such, they are in default. Doc. No. 1 at ¶ 18.[2] Plaintiff alleges that after the Debtor Defendants entered into the Instruments, the Judgment Creditor Defendant recorded a judgment against Cynthia A. Whiteside in the amount of $1,961.34. Doc. No. 1 at ¶ 11.

In Count I of the Complaint, Plaintiff requests judgment and decree establishing: Plaintiff holds the senior interest in the Property; Plaintiff accelerated payments of the balance due and provided notice of same; the precise sums due under the Instruments; foreclosure of the

---

[1] Neither the adjustable rate note nor the mortgage were attached to the Complaint. Moreover, in the Complaint, Plaintiff erroneously stated that the adjustable rate note and mortgage were entered into on July 3, 2007, and recorded on November 30, 2006. Doc. No. 1 at ¶ 10; *see also* Doc. Nos. 30-1 at 1; 30-3 at 1 (showing the note and mortgage were executed on November 15, 2006).

[2] Although it is not delineated in the Complaint, it appears that the Property is a residence.

Instruments against the Property; and that all other claims and interests in the Property are inferior, subordinate, and barred from claiming any right, title, interest, or equity of redemption in the Property.  Doc. No. 1 at 7.  In Count II, Plaintiff requests a post-sale judgment and/or a writ of possession.  Doc. No. 1 at ¶¶ 22-24.[3]  In Count III, Plaintiff requests a judgment against the Debtor Defendants for all amounts due under the Instruments, "exclusive of costs and fees."  Doc. No. 1 at ¶ 27.

After being properly served, neither the Debtor Defendants nor the Judgment Creditor Defendant appeared in this case, and defaults were entered against them.  Doc. Nos. 9-15.  On January 10, 2015, Plaintiff filed a Verified Motion for Default Final Judgment (the "First Default Motion"), along with proposed order on the motion.  Doc. No. 16.  On March 31, 2015, the Court entered an order denying the First Default Motion for the following reasons: (1) Plaintiff failed to provide any documents demonstrating when the Debtor Defendants defaulted on the Instruments, the date payments were accelerated under the Instruments, or the amount of outstanding principal balance at the time of default; (2) the Complaint and First Default Motion inconsistently allege the Instruments were executed on July 3, 2007, but were recorded on November 30, 2006, and documents themselves show the Instruments were executed on November 15, 2006; (3) the Complaint and the First Default Motion allege a different principal amount of the mortgage; (4) the Complaint alleges that the Judgment Creditor recorded its judgment against Cynthia Whiteside on July 11, 2008, but the First Default Motion alleges that the judgment was recorded on October 28, 2009; (5) Count II requested a writ of possession against the Judgment Creditor and the

---

[3] Plaintiff requests relief against all Defendants, including the Judgment Creditor, which clearly is not in possession of the Property, and against the "Sanchez Defendants," which are not defined or identified in the Complaint.  Doc. No. 1 at ¶¶ 22-24.

"Sanchez Defendants"; (6) Count III requested judgment for the amounts due under the Instruments exclusive of costs and fees, but the First Default Motion requested judgment inclusive of costs; (7) Plaintiff failed to provide support for any of the amounts requested; (8) the affidavit Plaintiff attached in support of the First Default Motion simply stated that the allegations in the Complaint and First Default Motion were true and accurate, which is neither sufficient nor accurate; and (9) Plaintiff's request for the appointment of a special master from Broward County, Florida, to advertise the sale of a property located Brevard County, Florida, and to conduct the sale in Pinellas County, Florida, did not comply with 28 U.S.C. § 2001(a).   Doc. No. 17 at 3-8.

On June 24, 2015, nearly three (3) months after the Court denied Plaintiff's request for a default judgment, Plaintiff filed an amended complaint (the "Amended Complaint").   Doc. No. 18.   In it, Plaintiff alleges that the Debtor Defendants executed the Instruments on November 15, 2006, and recorded them on November 30, 2006.   Doc. No. 18 at ¶ 10.   Plaintiff alleges that it is the owner and holder of the Instruments through a March 14, 2013 assignment.   *Id*. at ¶ 14.   Plaintiff alleges that it has "not yet recorded" the March 14, 2013 assignment.   *Id*.[4]  In the Amended Complaint, Plaintiff requests: a judgment against the Debtor Defendants with respect to the November 15, 2006 Instruments in the amounts due and owing thereunder inclusive of fees and costs; a declaration that Plaintiff provided the Debtor Defendants with notice of the acceleration of payments due under the Instruments; a declaration that any and all other interests in the Property are inferior to Plaintiff's interest; a foreclosure decree; and a post-sale judgment and/or writ of possession to the Property.   Doc. No. 18 at 5-8.

---

[4] The Court notes that Plaintiff now asserts that it has recorded the March 14, 2013 assignment.   Doc. No. 30 at ¶ 12.

On July 17, 2015, without serving the Amended Complaint, Plaintiff filed a motion for entry of Clerk's default against the Defendants.  Doc. No. 19.  On July 21, 2015, the Court entered an order denying the motion for Clerk's default, finding that the Amended Complaint differs from the Complaint in several respects such that it asserts new claims for relief and, therefore, it must be served under Rule 4.  Doc. No. 20 at 2-3.  On or before August 25, 2015, Plaintiff served the Amended Complaint on Defendants, who failed to file a response.  Doc. No. 23-25.  On March 4, 2016, the Clerk entered default against the Defendants.  Doc. Nos. 27-29.  On or before March 18, 2016, the Court directed Plaintiff to file a motion for default judgment.  Doc. No. 22 at 3.  On March 20, 2016, Plaintiff filed a Verified Motion for Default Judgment (the "Second Default Motion").  Doc. No. 30.  On March 21, 2016, Plaintiff filed a Motion for Leave to File Motion for Default Judgment (the "Motion for Extension of Time"), acknowledging that the Second Default Motion was not filed by March 18, 2016, and requesting that the Court grant Plaintiff a *nunc pro tunc* extension of time.  Doc. No. 31.  Counsel for Plaintiff states that he was prepared to file the Second Default Motion on March 18, 2016, but discovered that the electronic files were corrupted, possibly by a computer virus.  Doc. No. 31 at 4.  Therefore, Plaintiff was unable to file the Second Default Motion until March 21, 2016.  Doc. No. 31 at 4.

**II.    ANALYSIS.**

Similar to the First Default Motion, the Second Default Motion and the proposed order attached thereto contain critical new factual allegations, inconsistent requests for relief, and an insufficient, as well as inaccurate, affidavit.  Doc. Nos. 30 at 1-12; 30-4 at 1-8; 30-12 at 3-4, 30-13.

### A. The Instruments.

The Amended Complaint seeks declaratory relief, damages, and a judicial sale based upon the November 15, 2006, adjustable rate promissory note (Doc. No. 30-2 at 1-5) and mortgage (Doc. No. 30-3 at 1-16), which Plaintiff defines as "the Instruments."  Doc. No. 18 at ¶ 10. However, the Second Default Motion seeks declaratory relief, damages, and a judicial sale based upon on a September 25, 2008 Loan Modification Agreement (Doc. No. 30-4 at 1-8), which Plaintiff defines therein as the "Instruments."  Doc. No. 30 at ¶ 5.

Plaintiff acknowledges that the Loan Modification Agreement modifies the terms of the adjustable rate promissory note and mortgage.  Doc. No. 30 at ¶ 5.  The September 25, 2008 Loan Modification Agreement "amends and supplements" the November 15, 2006 promissory note and mortgage in several respects.  First, it changes the interest rate from adjustable to a fixed interest rate of 7.000%.  Doc. No. 30-4 at 2.  Second, it changes the principal amount of the loan from $119,700 to $123,318.97.  *Id*.  Third, it extends the maturity of the loan for two years, until September 1, 2038.  *Id*.  Thus, the Loan Modification Agreement is materially different from the November 15, 2006 promissory note and mortgage.[5]

The Amended Complaint does not mention the Loan Modification Agreement.  Doc. No. 18 at 1-8.  Thus, the Amended Complaint and Second Default Motion seek relief based upon different transactions or occurrences, yet Plaintiff now defines both as the "Instruments."  Doc. Nos. 18 at ¶ 10; 30 at ¶ 5.  The Court has previously instructed Plaintiff that Rule 54(c), Federal Rules of Civil Procedure, precludes the entry of a default judgment that "differ[s] in kind from, or exceed[s] in amount, what is demanded in the pleadings."  *Id*.; Doc. No. 17 at 4-5.  The Amended

---

[5] The Loan Modification Agreement also state that: "All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified. . . ."  Doc. No. 30-4 at 3.

Complaint and Second Motion for Default concern different agreements and, therefore, they differ in kind. Accordingly, pursuant to Rule 54(c), Federal Rules of Civil Procedure, it is recommended that the Second Motion for Default be denied.

**B. Accelerated Payments.**

The November 15, 2006 mortgage contains the following acceleration and remedies clause, which is adopted by the September 25, 2008 Loan Modification Agreement:

> 22. Acceleration; Remedies. <u>Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument</u>. . . .  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Doc. No. 30-3 at 11 (emphasis added); *see also* Doc. No. 30-4 at ¶ 5(a)-(b) (adopting all rights, remedies, and covenants applying to default from the November 15, 2006 mortgage in the September 25, 2008 Loan Modification Agreement). Thus, prior to accelerating any payments or seeking foreclosure, the Plaintiff is required to give the Debtor Defendants notice of their default, actions they must take to cure default, a date certain to take those actions, and a warning about what may happen in the event they fail to cure the default. Doc. No. 30-3 at 11; *see Konsulian v. Busey Bank, N.A.*, 61 So. 3d 1283, 1285 (Fla. 2d DCA 2011) (holding compliance with identical

acceleration clause is clear and mandatory condition precedent to foreclosure that must be pled and proven); *Snow v. Wells Fargo Bank, N.A.*, 156 So. 3d 538, 541 (Fla. 3d DCA 2015) (holding identical acceleration clause is an optional acceleration clause, which is "not automatic or self-executing, but requires the lender to exercise this option and to give notice to the borrower that it has done so.").

In Count I of the Amended Complaint, Plaintiff states in conclusory fashion that it "and/or one of its predecessors in interest accelerated payment of the balance of the Instruments, of which the [Debtor Defendants] were provided with notice." Doc. No. 18 at ¶ 19. Plaintiff does not attach any such notice to the Amended Complaint or to the Second Default Motion. Nor does the affidavit attached to the Second Default Motion expressly aver that the Plaintiff complied with the acceleration clause prior to filing suit. Doc. No. 30-13. In the Second Default Motion, Plaintiff merely alleges that on October 29, 2014, it "accelerated the Instruments by filing suit. . . ." Doc. No. 30 at ¶ 16. Thus, in the Second Default Motion, Plaintiff maintains its right to accelerate payments arises by the filing of the Complaint on October 29, 2014. *Id*. Plaintiff attaches the affidavit of Roger Hoss, Plaintiff's Director and Corporate Secretary, to the Second Default Motion. Doc. No. 30-13 at 1-2. Mr. Hoss avers only that "the allegations of and Exhibits to Plaintiff's Amended Complaint and [Second Motion for Default] . . . are true. . . ." Doc. No. 30-13 at 1. However, Plaintiff's verified allegations in the Second Motion for Default (Doc. Nos. 30 at ¶ 16) are insufficient to demonstrate that Plaintiff provided the Debtor Defendants with notice that complies with Plaintiff's mandatory acceleration clause (Doc. No. 30-3 at 11), as quoted above, prior to filing the October 29, 2014 Complaint. Thus, Plaintiff's conclusory allegation in the Amended Complaint (Doc. No. 18 at ¶ 19) that the Debtor Defendants were provided with notice of the acceleration is not well-pled because it is conclusory and is expressly based upon the

mere filing of the Complaint (Doc. No. 30 at ¶ 16). *See Konsulian*, 61 So. 3d at 1285 (holding there must be proof of compliance with acceleration clause); *DiSalvo v. SunTrust Mortg., Inc.*, 115 So. 3d 438, 439 (Fla. 2d DCA 2013) ("[A] mortgagee's right to the security for a mortgage is dependent upon its compliance with the terms of the mortgage contract, and it cannot foreclose until it has proven compliance."). Accordingly, because Plaintiff has failed to demonstrate compliance with its acceleration clause, it is recommended that the Second Default Motion be denied.

### C. Inconsistent Requests for Relief.

In the Second Default Motion, Plaintiff seeks: $2,514.17 in property taxes Plaintiff has paid on the Property in 2011 through 2013; $122,161.56 in principal balance; $61,710.00 in post-default interest from January 1, 2009 through March 18, 2016;[6] and $11,878.12 in post-acceleration interest from October 29, 2014 through March 18, 2016. Doc. No. 30 at 4. Thus, the Second Default Motion seeks judgment against the Debtor Defendants in the amount of $198,263.85. *Id.*[7] However, in the proposed order Plaintiff attaches to the Second Default Motion, Plaintiff only seeks a total of $183,871.56, representing the principal sum due ($121,161.56) and "pre-judgement interest" ($61,710.00). Doc. No. 30-12 at 13. Thus, without explanation, in its proposed order, Plaintiff does not seek to recover property taxes ($2,514.17) or post-acceleration interest from October 29, 2014 through March 18, 2016 ($11,878.12). *Compare* Doc. No. 30 at 4 *with* Doc. No. 30-12 at 13. Accordingly, Plaintiff's requests for relief are inconsistent.

---

[6] Plaintiff calculates interest at 7.00% per annum or $23.43 per diem. Doc. No. 30 at 4.

[7] At no point in either the Amended Complaint or the Second Default Motion does the Plaintiff provide a sum total of the amount of the judgment it requests.

- 9 -

### D. Post-Default Interest ($61,710.00).

As set forth above, Plaintiff requests post-default interest in the amount of $61,710.00 from January 1, 2009 through March 18, 2016. Doc. Nos. 30 at 4; 30-12 at 13. Plaintiff calculates interest at a rate of 7.00% per annum or $23.43 per diem. Doc. No. 30 at 4. There are 2,633 days between January 1, 2009 and March 18, 2016. At a rate of $23.43 per diem, the amount of interest due after 2,633 days is $61,691.19. Moreover, by Plaintiff's own allegation, the Debtor Defendants did not default until February 1, 2009. Doc. No. 30 at ¶ 15 (Debtor Defendants "defaulted [by] not making their 2/1/09 loan payment per the last one on 1/1/09."). There are 2,603 days between February 1, 2009 and March 18, 2016. At a rate of $23.43, the amount of interest due after 2,603 days is $60,988.29. Thus, neither calculation equals $61,710.00 in post-default interest. Accordingly, Plaintiff's interest calculation is inaccurate and unsupported.

### E. Post-Acceleration Interest.

In the Second Default Motion, Plaintiff also requests $11,878.12 in "post-acceleration interest" from October 29, 2014 through March 18, 2016. Doc. No. 30 at 4. There are 507 days between October 29, 2014 and March 18, 2016. At a rate of $23.43 per diem, the amount post-acceleration interest allegedly due after 507 days is $11,879.01, which is slightly more than the amount Plaintiff requests. However, Plaintiff is clearly calculating interest twice between October 29, 2014 and March 18, 2016, once for post-default interest and once for post-acceleration interest. Doc. No. 30 at 4. The Second Default Motion points to no clause or legal authority permitting Plaintiff to both forms of interest during that period. Doc. No. 30 at 4. Having carefully reviewed the November 15, 2006 promissory note and mortgage, and the September 25, 2008 Loan Modification Agreement, the undersigned finds nothing authorizing the Plaintiff to receive both forms of interest during the relevant period.

### F. Mr. Hoss's Affidavit.

In the Court's prior order denying Plaintiff's First Default Motion, the Court pointed out that Mr. Hoss's affidavit contained only the "conclusory statement that the Complaint and Motion are 'true and accurate,' which is totally inadequate to establish what amounts Plaintiff is entitled to recover." Doc. No. 17 at 7 (citing Doc. No. 16-7 at 1-2). Mr. Hoss's current affidavit once again contains only the conclusory statement that "the allegations of and Exhibits to Plaintiff's Amended Complaint and [Second Motion for Default] . . . are true. . . ." Doc. No. 30-13 at 1. Given the inconsistencies between the Amended Complaint and Second Default Motion, between Plaintiff's calculation and character of the amounts due in the Second Default Motion and the proposed order, and the inaccurate and unsupported interest calculations, all detailed above, Mr. Hoss's affidavit is totally insufficient. Accordingly, it is recommended that Plaintiff has failed to meet its burden to establish the precise amount and character of damages sought in its Second Default Motion.

Based on all the foregoing reasons, it is recommended that the Second Default Motion be denied and the Motion for Extension of Time be denied as moot.

### G. Further Amendment.

For all of the reasons set forth above, but especially the fact that the Amended Complaint fails to contain any factual allegations or request any relief concerning the actual contract at issue (*see supra* pp. 6-7), Plaintiff cannot obtain any relief without filing a second amended complaint. Rule 15(a), Federal Rules of Civil Procedure, provides that a party may, under most circumstances, amend its pleading once as a matter of right. Fed. R. Civ. P. 15(a)(1). Further amendments, in the discretion of the District Court, should be "freely give[n] when justice so requires." Fed. R.

Civ. P. 15(a)(2); *Forman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

Addressing such further amendments, the United States Supreme Court has held:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman*, 371 U.S. at 182. Thus, undue delay and failures to cure deficiencies by prior amendment are reasons, which may be grounds to deny further amendments. *Id*.

In this case, the Complaint and Amended Complaint seek relief concerning the November 15, 2006 promissory note and mortgage. Doc. Nos. 1 and 18. Based upon the allegations and attachments to the Second Default Motion, however, it is now clear that the November 15, 2006 agreement is not the operative contract between the parties. Rather, the September 25, 2008 Loan Modification Agreement is the contract at issue. Over the past two years, and despite being given an opportunity to file an amended complaint, the Plaintiff has failed to file sufficient, well-pled allegations of fact, prove compliance with the terms of the instruments at issue, prove the amount and character of damages to be awarded and, most importantly, has now identified a different contract at issue. *See* Doc. Nos. 1, 16-18, 30. Moreover, the Court previously pointed out many of these same deficiencies at issue in its prior order denying the First Default Motion. Doc. No. 17 at 3-8. For example, the Court previously instructed Plaintiff that a conclusory affidavit, which simply averred that all factual allegations are true and accurate is woefully insufficient. Doc. No. 17 at 7. Yet, in the Second Default Motion, Plaintiff continues to rely on a conclusory and, at least with respect to the calculations, false affidavit. Doc. No. 30-13; *see supra* pp. 10-11.

Finally, both the Complaint and Amended Complaint concern a different transaction and occurrence – the November 15, 2006 promissory note and mortgage – than the transaction Plaintiff is currently seeking relief under – the September 25, 2008 Loan Modification Agreement. Doc. Nos. 1, 18, 30 at ¶¶ 5-8. Thus, a further amendment would necessarily concern an entirely new claim.

There is no just reason why Plaintiff was not aware of the September 25, 2008 Loan Modification Agreement on October 29, 2014, when the Complaint was filed. Given the record in this case, Plaintiff's failure to cure deficiencies in the Complaint despite being allowed the opportunity to do so, and the substantial delay that has resulted therefrom, it is recommended that the Court decline to exercise its discretion to permit Plaintiff a further amendment. *See Foman*, 371 U.S. at 182 (Court may decline to exercise discretion to afford further amendments where there has been repeated failure to cure deficiencies and undue delay).[8] Accordingly, it is recommended that the Court dismiss this case without prejudice.

### III. CONCLUSION.

Based on the foregoing, it is hereby **RECOMMENDED** that:

1. The Second Default Motion (Doc. No. 30) be **DENIED**;
2. The Motion of Extension of Time (Doc. No. 31) be **DENIED as moot**;
3. The Court decline to exercise its discretion to permit further amendment; and
4. The case be **DISMISSED WITHOUT PREJUDICE**.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and

---

[8] As set forth above, there is also a substantial question concerning whether the Debtor Defendants received contractual notice of their default, an opportunity to cure, and a warning that acceleration and foreclosure may result if they fail to cure.

- 14 -

Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on August 3, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties